**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JUSTIN RANDALL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>ACE HARDWARE CORPORATION,<br><br>                 Defendant. | Case No. 1:24-cv-3158<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Justin Randall ("Mr. Randall" or "Plaintiff") brings this action on behalf of himself, and all others similarly situated against Defendant, Ace Hardware Corporation ("Ace Hardware" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## NATURE OF THE ACTION

1. This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach").

2. The Data Breach resulted in the unauthorized disclosure, exfiltration, and theft of consumers' highly personal information, including names and Social Security numbers, ("personal identifying information" or "PII").

3. Defendant stores a litany of highly sensitive personal identifiable information ("PII") about its current and former employees. But Defendant lost control over that data when

cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.     The Data Breach not only affects current and former employees but also prospective job applicants and thus, affects consumers who had no direct employment with Ace Hardware.

5.     On information and belief, cybercriminals bypassed Ace Hardware's inadequate security systems to access Plaintiff's and the Class Member's PII in its computer systems.

6.     Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former employees' PII.

7.     On information and belief, the Data Breach began on or around October 27, 2023, when an unauthorized party gained access to Defendant's network. Defendant did not become aware of suspicious activity on its network until October 29, 2023, at least two days after the Data Breach had first begun, allowing cybercriminals unfettered access to Plaintiff's and the Class's most Sensitive Private information during that time.

8.     On April 1, 2024, Defendant finally notified state Attorneys General and many putative Class Members about the widespread Data Breach ("Notice Letter"). A Sample Notice Letter is attached as **Exhibit A**. Plaintiff's Notice Letter is attached as **Exhibit B**. Ace Hardware waited over five months before informing Class Members about the Data Breach.

9.     According to the Maine Attorney General Data Breach Notification Page even

though Plaintiff and at least 7,295[1] Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.  A copy of the Maine Attorney General Data Breach Notification Page, as of April 17, 2024, is attached as **Exhibit C**.

10.     Once finally notified, Defendant's Breach Notice obfuscated the nature of the breach and the threat it posed—refusing to tell its applicants and employees how many people were impacted, how the breach happened, or why it took Defendant over five months to begin notifying victims that hackers had gained access to highly sensitive PII.

11.     Defendant's failure to timely detect and report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

12.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

13.     In failing to adequately protect Plaintiff's and the Class's PII, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law, causing harm to its current, former and prospective employees and applicants.

14.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class

---

[1] *See Data Breach Notifications*, MAINE ATTY GEN, https://apps.web.maine.gov/online/aeviewer/ME/40/1a6f11f1-09b7-4c7b-a836-3367541713e1.shtml

trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

15.     Plaintiff Justin Randall is a former employee of Ace Hardware and a Data Breach victim.

16.     Accordingly, Plaintiff, on his own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

17.     Plaintiff, Justin Randall, is a natural person and citizen of Wisconsin, where he intends to remain. Plaintiff Randall is a former employee of Ace Hardware and Data Breach victim, receiving the Breach Notice on April 1, 2024.

18.     Defendant Ace Hardware Corporation is a Delaware corporation. Ace Hardware Corporation is headquartered in Oak Brook, Illinois with its principal place of business at 2200 Kensington Court, Oak Brook, Illinois 60523.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Members of the proposed Class are citizens of different states than Defendant. And there are over 100 putative Class members.

20.     This Court has personal jurisdiction over Defendant because it is headquartered in Illinois, regularly conducts business in Illinois, and has sufficient minimum contacts in Illinois.

21.     Venue is proper in this Court because Defendant's principal office is in this District,

and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND FACTS

### ACE HARDWARE

22.     Ace Hardware is the largest retailer-owned hardware cooperative in the world with over 5,800 locally owned and operated hardware stores in approximately 60 countries.[2]  As the "fastest growing convenience hardware retailer in the country" Ace Hardware has over 4,000 domestic hardware stores around the United States.[3]

23.     Defendant also maintains an online sales presence where consumers can shop for hardware or other home improvement goods. Defendant employs tens of thousands of people in its stores, warehouses, distributions centers, and corporate offices.

24.     As part of its business, Defendant receives and maintains the PII of thousands of current, former and prospective employee applicants. In doing so, Defendant implicitly promises to safeguard their PII.

25.     In collecting and maintaining its current and former employees' PII, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

26.     Indeed, Ace Hardware promises in its Employee Candidate Privacy that it has

---

[2] Newsroom, Ace Hardware, https://newsroom.acehardware.com/ace-hardware-ranked-as-one-of-the-top-five-franchises-in-the-world-first-in-category-for-2024/
[3] Ace Hardware Opens Over 100 Stores In 2023 On Track To Open More Than 170 Stores This Year", https://newsroom.acehardware.com/ace-hardware-on-track-to-open-more-than-170-new-stores-in-2023/ (August 22, 2023)

implemented "various security measures to protect personal information that we collect."[4]

27. Despite recognizing its duty to do so, on information and belief, Ace Hardware has not implemented reasonable cybersecurity safeguards or policies to protect its employees' and job applicants' PII or supervised its IT or data security agents and employees, to prevent, detect, and stop breaches of its systems. As a result, Defendant left significant vulnerabilities in its storage of Plaintiff's and the Class's PII for cybercriminals to exploit and gain access to employees' PII.

28. As part of its employment application process and a condition of employment with Ace Hardware, Defendant requires its applicants and employees to disclose PII including but not limited to, their names, Social Security number, address, date of birth, and gender, as well as medical records for certain applicants and employees.[5]

29. Ace Hardware retains the personal information during the application process and employment tenure as well as for an unspecified period of time thereafter.[6]

30. Defendant, thus, receives and maintains the PII of thousands consumers every year.

31. Defendant used that PII to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that PII to obtain employment and payment for that employment.

***The Data Breach***

32. According to the Breach Notice, Ace Hardware first discovered the data security incident that "impacted certain corporate systems" on October 29, 2023. Ex. A. Following an internal investigation, Defendant determined that the Data Breach had occurred between October

---

[4] ACE HARDWARE EMPLOYEE CANDIDATE PRIVACY POLICY: https://careers.acehardware.com/candidate-privacy-policy/ (last visited April 17, 2024)
[5] *Id.*
[6] *Id.*

27, 2023, and October 29, 2023. Ex. A. In other words, Defendant's investigation revealed that its network had been hacked by cybercriminals at least two days before it discovered the Breach and that Defendant's cyber and data security systems were completely inadequate, allowing the cybercriminals access to thousands of files containing a treasure trove of highly private PII.

33.     Defendant admits that after a "thorough" and "lengthy review process," it "determined" that the PII of each person who received the Breach Notice had been impacted by the Breach.  Ex. A.

34.     Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's PII for theft and sale on the dark web.

35.     On April 1, 2024 –over five months after the Breach first occurred – Ace Hardware finally notified Plaintiff and Class Members about the Data Breach.

36.     Despite its duties and alleged commitments to safeguard PII, Defendant did not in fact follow industry standard practices in securing the PII of its employees and applicants, as evidenced by the Data Breach.

37.     In response to the Data Breach, Defendant contends that it has "taken the steps necessary to address the incident" and "implemented additional technical safeguards to further enhance the security of information in our possession and to help prevent similar events from happening in the future…" Ex. A. Although Defendant fails to expand on what these alleged "steps" or "safeguards" are, such security measures should have been in place before the Data Breach.

38.     Through the Data Breach, Defendant recognized its duty to implement reasonable cybersecurity safeguards or policies to protect employment PII, insisting that, despite the Data Breach demonstrating otherwise, Defendant is "committed to protecting the information you have

7

entrusted to us." Ex. A.

39.     Through its Breach Notice, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant against incidents of identity theft and fraud by regularly reviewing your credit reports and account statements for suspicious activity and to detect errors." Ex. A.

40.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

41.     Defendant has offered only 12 months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers. Further, the breach exposed employees' nonpublic, highly private information- a disturbing harm in and of itself.

42.     Even with complimentary credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

43.     On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing them to lose control over its employees' PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

8

44.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

45.     Ace Hardware has offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers.

46.     Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

47.     Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Class Members. And yet, Defendant has done absolutely nothing to provide Plaintiff and the Class Members with relief for the damages they suffered and will suffer.

48.     On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its consumers' PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of which Defendant were on Notice.***

49.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in similar industries preceding the date

of the breach.

50.     In light of recent high profile data breaches at other companies in its industry, Defendant knew or should have known that its electronic records and employees' PII would be targeted by cybercriminals.

51.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[7] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[8]

52.     Indeed, cyberattacks against retailer industries have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime."[9]

53.     Cyberattacks on companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[10]

---

[8] *Id.*
[9] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited June 23, 2023).
[10] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited March 13, 2023).

54.     Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Ace Hardware.

***Plaintiff Randall's Experience***

55.     Plaintiff Randall is a former Ace Hardware employee.

56.     As a condition of employment with Ace Hardware, Plaintiff was required to provide his PII, including but not limited to his full name, Social Security number, date of birth, gender, and address.

57.     Plaintiff provided his PII to Ace Hardware and trusted that the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law.

58.     Ace Hardware deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for over five months.

59.     As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

60.     Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from additional identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach.

61.     Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

11

62.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

63.     Plaintiff suffered actual injury from the exposure and theft of his PII—which violates his rights to privacy.

64.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties and possibly criminals.

65.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

66.     Indeed, following the Data Breach, Plaintiff has experienced an enormous increase in spam calls, suggesting that his PII has been stolen and is now in the hands of cybercriminals.

67.     Once an individual's PII is for sale and access on the dark web, as Plaintiffs' PII is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[11]   On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

68.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

69.     As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the

---

[11] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information  (last visited January 9, 2024).

proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.   The loss of the opportunity to control how their PII is used;

    b.   The diminution in value of their PII;

    c.   The compromise and continuing publication of their PII;

    d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.   Delay in receipt of tax refund monies;

    g.   Unauthorized use of stolen PII; and

    h.   The continued risk to their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

70.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

71.    The value of Plaintiff's and the Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen PII openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

72.     It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

73.     One such example of criminals using PII for profit is the development of "Fullz" packages.

74.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

75.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

76.     Defendant disclosed the PII of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

77.     Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

78.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

79.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a.      protect the sensitive consumer information that they keep;

    b.      properly dispose of PII that is no longer needed;

    c.      encrypt information stored on computer networks;

    d.      understand its network's vulnerabilities; and

    e.      implement policies to correct security problems.

80.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

81.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security

measures.

82.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

83.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Fails to Comply with Industry Standards***

84.     As noted above, experts studying cyber security routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

85.     Several best practices have been identified that a minimum should be implemented by employers in possession of PII, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

86.     Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls,

switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

87.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

88.     These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its employees. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

89.     Plaintiff sues on behalf of himself and the proposed nationwide class ("Class") defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> All individuals residing in the United States whose PII was compromised in the Data Breach, including all those who received a notice of the Data Breach.

90.     Excluded from the Class are Defendant, their agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

91.     Plaintiff reserves the right to amend the class definition.

92.     This action satisfies the numerosity, commonality, typicality, and adequacy

requirements under Fed. R. Civ. P. 23.

      a.     **Numerosity**. Plaintiff is representative of the Class, consisting of at least 7,295 members, far too many to join in a single action;

      b.     **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

      c.     **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

      d.     **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with the Class's interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

      e.     **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

      i.    Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

      ii.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

      iii.    Whether Defendant were negligent in maintaining, protecting, and securing PII;

18

iv.  Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's PII;

v.  Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.  Whether Defendant's Breach Notice was reasonable;

vii.  Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii.  What the proper damages measure is; and

ix.  Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

93.  Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

94.  Plaintiff realleges all previous paragraphs as if fully set forth below.

95.  Plaintiff and members of the Class entrusted their PII to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

96.  Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-

the-art industry standards concerning data security would result in the compromise of that PII — just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's PII by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

97.     Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

98.     Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's PII.

99.     The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware or otherwise.

100.     PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

101.    Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

102.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

### COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiffs and the Class)

103.    Plaintiff realleges all previous paragraphs as if fully set forth below.

104.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's PII.

105.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce,"

including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's PII.

106. Defendant breached its duty to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

107. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential PII.

108. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

109. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

110. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

111. The injury and harm suffered by Plaintiff and members of the Class were the

reasonably foreseeable result of Defendant's breach of its duty. Defendant knew or should have known that it was failing to meet its duty and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

112.    Had Plaintiff and the Class known that Defendant did not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

113.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence per se.

114.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

115.    Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant's fails to undertake appropriate and adequate measures to protect their PII in its continued possession.

**COUNT III**
**Breach of an Implied Contract**
**(On Behalf of Plaintiff and the Class)**

116.    Plaintiff realleges all previous paragraphs as if fully set forth below.

117.    Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving employment from Defendant. Plaintiff and Class Members provided their

PII to Defendant in exchange for Defendant's employment.

118.    Plaintiff and the Class Members accepted Defendant's offers by disclosing their PII to Defendant in exchange for employment.

119.    Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

120.    In providing their PII, Plaintiff and Class Members entered into an implied contract with Defendant whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' PII.

121.    In delivering their PII to Defendant, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

122.    Plaintiff and the Class Members would not have entrusted their PII to Defendant in the absence of such an implied contract.

123.    Defendant accepted possession of Plaintiff's and Class Members' PII.

124.    Had Defendant disclosed to Plaintiff and Class Members that Defendant did not have adequate computer systems and security practices to secure employees' PII, Plaintiff and members of the Class would not have provided their PII to Defendant.

125.    Defendant recognized that employees' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class

Members.

126.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

127.    Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard its data.

128.    Defendant breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their PII.

129.    As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' PII; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their PII; and (h) the continued and substantial risk to Plaintiff's and Class Members' PII, which remains in the Defendant's possession with inadequate measures to protect Plaintiff's and Class Members' PII.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff realleges all previous paragraphs as if fully set forth below.

131.     Plaintiff and members of the Class conferred a benefit upon Defendant in providing the PII to Defendant.

132.     Defendant appreciated or had knowledge of the benefits conferred upon them by Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's PII, as this was used to facilitate the services it sold to Plaintiff and the Class.

133.     Instead of providing a reasonable level of security, or retention policies, which would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

134.     Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the Class's PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII to Defendant had they known Defendant would not adequately protect their PII.

135.     Plaintiffs and Class Members have no adequate remedy at law.

136.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

**COUNT V**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

137.     Plaintiff realleges all previous paragraphs as if fully set forth below.

138.     Given the relationship between Defendant and Plaintiff and Class Members, where Defendant became guardian of Plaintiff's and Class Members' PII, Defendant became a fiduciary

by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class Members,

(1) for the safeguarding of Plaintiff's and Class Members' PII; (2) to timely notify Plaintiff and

Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records

of what information (and where) Defendant did and does store.

139.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members

upon matters within the scope of Defendant's relationship with them—especially to secure their

PII.

140.    Because of the highly sensitive nature of the PII, Plaintiff and Class Members

would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they

known the reality of Defendant's inadequate data security practices.

141.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing

to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' PII.

142.    Defendant also breached its fiduciary duties to Plaintiff and Class Members by

failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and

practicable period.

143.    As a direct and proximate result of Defendant's breach of its fiduciary duties,

Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as

detailed *supra*).

**COUNT VI**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

144.    Plaintiff realleges all previous paragraphs as if fully set forth below.

145.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their

PII and were accordingly entitled to the protection of this information against disclosure to

27

unauthorized third parties.

146.    Defendant owed a duty to Plaintiff and Class Member to keep their PII confidential.

147.    Defendant affirmatively and recklessly disclosed Plaintiff's and Class Members' PII to unauthorized third-parties.

148.    The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

149.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' PII constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

150.    Defendant's failure to protect Plaintiff's and Class Members' PII acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

151.    Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

152.    Because Defendant failed to properly safeguard Plaintiff's and Class Members' PII, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

153.    As a proximate result of Defendant's acts and omissions, Plaintiff's and the Class Members' private and sensitive PII was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

154.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate

cybersecurity system and policies.

155.     Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard Plaintiff's and the Class's PII.

156.     Plaintiff, on behalf of himself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII.

157.     Plaintiff, on behalf of himself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

### COUNT VII
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"), 815 Ill. Comp. Stat. §§ 505/1, et seq.
### (On behalf of Plaintiff and the Class)

158.     Plaintiff realleges all previous paragraphs as if fully set forth below.

159.     Plaintiff and the Class are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e).  Plaintiff, the Class, and Defendant are "persons" as defined in 815 Ill. Comp. Stat. § 505/1(c).

160.     Defendant engaged in "trade" or "commerce," including the provision of services, as defined under 815 Ill. Comp. Stat. § 505/1(f). Defendant engages in the sale of "merchandise" (including services) as defined by 815 Ill. Comp. Stat. § 505/1(b) and (d).

161.     Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment and omission of material facts in connection with the sale and advertisement

of their services in violation of the CFA, including: (i) failing to maintain adequate data security to keep Plaintiff's and the Class Members' sensitive PII from being stolen by cybercriminals and failing to comply with applicable state and federal laws and industry standards pertaining to data security, including the FTC Act; (ii) failing to disclose or omitting materials facts to Plaintiff and the Class regarding their lack of adequate data security and inability or unwillingness to properly secure and protect the PII of Plaintiff and the Class; (iii) failing to disclose or omitting materials facts to Plaintiff and the Class about Defendant's failure to comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the PII of Plaintiff and the Class; and (iv) failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiff's and the Class's PII and other personal information from further unauthorized disclosure, release, data breaches, and theft.

162.    These actions also constitute deceptive and unfair acts or practices because Defendant knew the facts about its inadequate data security and failure to comply with applicable state and federal laws and industry standards would be unknown to and not easily discoverable by Plaintiff and the Class and defeat their reasonable expectations about the security of their PII.

163.    Defendant intended that Plaintiff and the Class rely on its deceptive and unfair acts and practices and the concealment and omission of material facts in connection with Defendant's offering of goods and services.

164.    Defendant's wrongful practices were and are injurious to the public because those practices were part of Defendant's generalized course of conduct that applied to the Class. Plaintiff and the Class have been adversely affected by Defendant's conduct and the public was and is at risk as a result thereof.

165.    Defendant also violated 815 ILCS 505/2 by failing to immediately notify Plaintiff

and the Class of the nature and extent of the Data Breach pursuant to the Illinois Personal Information Protection Act, 815 ILCS 530/1, et seq.

166.    As a result of Defendant's wrongful conduct, Plaintiff and the Class were injured in that they never would have provided their PII to Defendant, or purchased Defendant's services, had they known or been told that Defendant failed to maintain sufficient security to keep their PII from being hacked and taken and misused by others.

167.    As a direct and proximate result of Defendant's violations of the CFA, Plaintiff and the Class have suffered harm:  (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

168.    Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiff and the Class seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as a result of Defendant's violations of the CFA.

## **PRAYER FOR RELIEF**

Plaintiff and the Class demand a jury trial on all claims so triable and request that the

Court enter an order:

A.      Certifying this case as a class action on behalf of Plaintiff and the proposed Class,

appointing Plaintiff as class representatives, and appointing their counsel to

represent the Class;

B.      Awarding declaratory and other equitable relief as is necessary to protect the

interests of Plaintiff and the Class;

C.      Awarding injunctive relief as is necessary to protect the interests of Plaintiff and

the Class;

D.      Enjoining Defendant from further deceptive practices and making untrue

statements about the Data Breach and the stolen PII;

E.      Awarding Plaintiff and the Class damages that include applicable compensatory,

exemplary, punitive damages, and statutory damages, as allowed by law;

F.      Awarding restitution and damages to Plaintiff and the Class in an amount to be

determined at trial;

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiff and the Class leave to amend this complaint to conform to the

evidence produced at trial; and

J.      Granting such other or further relief as may be appropriate under the

circumstances.

**JURY DEMAND**

Plaintiff hereby demands that this matter be tried before a jury.


Dated: April 19, 2024                    Respectfully submitted,

                                         By:  */s/ Cassandra P. Miller*
                                              Raina C. Borrelli
                                              Samuel J. Strauss, Bar No. 6340331
                                              Cassandra P. Miller, Bar No. 6290238
                                              TURKE & STRAUSS LLP
                                              613 Williamson St., Suite 201
                                              Madison, WI 53703
                                              Telephone: (608) 237-1775
                                              Facsimile: (608) 509-4423
                                              raina@turkestrauss.com
                                              sam@turkestrauss.com
                                              cassandram@turkestrauss.com